NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0520n.06
Filed: June 17, 2005

No. 04-3328

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **WILLIAM SMALL**, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **ANTHONY BRIGANO, WARDEN**, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | |

Before: **GUY and ROGERS**, **Circuit Judges**; **DOWD**, **District Judge**.[*]

**ROGERS, Circuit Judge.** William J. Small, a state prisoner, appeals the district court's

denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Small was convicted

in Ohio of two counts of burglary, one count of aggravated burglary, and one count of kidnapping.

The district court granted a certificate of appealability on the issue of whether Small's trial counsel

was ineffective for failing to investigate the alleged criminal record of a potential defense witness,

Jean Campbell, before deciding not to call Campbell to the stand on this basis. Small alleges that

Campbell would have provided testimony favorable to Small. The Ohio Court of Appeals found

that, even assuming that Small's counsel had performed deficiently, Small had failed to establish

that the failure to investigate prejudiced Small's defense. The magistrate judge's report and

---

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District
of Ohio, sitting by designation.

recommendation, which the district court adopted, found that the state court's decision was not an

unreasonable application of federal law. We affirm.

This court presumes the state court's findings of fact to be correct. 28 U.S.C. § 2254(e)(1)

(2001). The Ohio Court of Appeals, in ruling on Small's state petition for postconviction relief,

summarized the facts of the case as follows:

> From April 1999 to March 2000, appellant lived with his girlfriend, Maxcine Martin, and her four children, including her two sons Sam and Ira. When Martin and appellant's relationship deteriorated, Martin told appellant to move out. Appellant moved out and took most or all of his personal belongings with him. Martin told appellant several times not to return to the house. On the evening of April 10, 2000, as Martin was returning from a trip, appellant pushed his way through a doorway into Martin's house and took a Dreamcast video game system that had been purchased by appellant, Ira, and Sam, using Martin's money. Appellant stated that he was taking the Dreamcast "because I can." Appellant then left the house. A short time thereafter, appellant began calling Martin on the telephone several times per day, telling her that he would kill her, "mess" her up, blow up her car and neighborhood, and kill Ira. Martin did not call the police at this time.
>
> On April 29, 2000, Martin was returning home in the early morning when appellant jumped out of the bushes just before she got to her back door. Appellant struck Martin in the head, causing her to fall. He continued to hit her in the head and choke her. Sharon Berry, a neighbor, testified she saw appellant jump out from the bushes and strike Martin until appellant dragged Martin around the side of the house and out of her view. After striking and kicking Martin, appellant left without entering the residence. Appellant continued to make threats on the phone to Martin.
>
> On May 8, 2000, Andre Small, appellant's brother, knocked on Martin's door. After seeing Andre through the peephole, Martin opened her door. However, after she opened the door, appellant appeared beside the doorway and pushed his way into the house. He locked the door, pulled the blinds, and told Martin to sit on the couch and not move. After a conversation regarding the title to her vehicle, appellant told Martin to call his former girlfriend, Jean Campbell. After Martin called Campbell, appellant left Martin's house. Appellant later telephoned Martin and told her that he was going to kill her.

On May 12, 2000, while driving a friend to cash a check, Martin saw Andre and picked him up. She took Andre back to her home and went upstairs to use the bathroom. While Martin was in the bathroom, appellant entered the house, went upstairs, and began hitting and kicking her. He then pushed her down the stairs and continued to hit and kick her. After Martin made it onto the couch, appellant picked up an electric "thunderball" and repeatedly hit her on the leg with it. Before leaving, appellant asked Martin if the person she took to cash the check was her "man." That evening, appellant telephoned Martin with more threats. Approximately a week later, Martin called the police when appellant continued to call her and threaten to kill Ira.

JA 57–58.

The jury convicted Small of two counts of burglary, one count of aggravated burglary, and one count of first-degree kidnapping. JA 380. The trial court imposed "a sentence of seven years on Counts One and Two and sentences of eight years on Counts Four and Five." JA 381.

Small appealed his conviction and sentence. One ground on appeal was similar to the claim at issue here: Small urged that his trial counsel was ineffective, in violation of Small's rights under the Sixth and Fourteenth Amendments, for failing to call Jean Campbell, Small's former girlfriend, as a witness. Small argued that Campbell had spoken with the alleged victim of the offenses, Maxcine Martin, and could testify that Martin had "set up" Small. JA 51. The Ohio Court of Appeals found that Small's counsel's failure to call Campbell to the stand "was purely a matter of trial tactics." JA 51. The court sustained only one of Small's arguments on appeal, finding that the trial court's sentencing order was ambiguous as to the term of imprisonment. The court therefore remanded the matter to the trial court solely in order for the court to clarify its sentence. JA 53.

Small then filed a petition for state postconviction relief. As one ground for relief, Small re-asserted his claim of ineffective assistance of trial counsel. JA 485. Specifically, Small alleged, the

prosecutor had informed Small's counsel at trial that a "Jean Campbell" had a criminal record. *Id.* Small's counsel had previously planned to call Campbell to the stand. Counsel believed the prosecutor's assertion about Campbell's criminal record, however, and decided on this basis not to call Campbell. In fact, according to Small, the prospective witness named Jean Campbell had a clean record. Small's petition alleges that his trial counsel failed to do any independent investigation concerning Campbell's background and that if he had, he would have discovered that the prosecutor's assertion was incorrect.

The Ohio Court of Appeals found that, even assuming that counsel's performance was deficient, Small had not shown that his defense was prejudiced by counsel's failure to investigate Campbell's record. In the evidentiary hearing on Small's petition for state postconviction relief, Small called two witnesses: Campbell and Roger Koeck, Small's trial counsel. Campbell testified that, had she been called as a witness at trial, she would have testified that Martin, Small's alleged victim, made comments to Campbell that would have exculpated Small. Martin told Campbell that she was upset with Small for seeing other women and that Martin, in order to seek revenge, was going to lie to "send [Small] down the river." JA 578. Martin had told Campbell that Martin was "gonna get her kids on the stand and lie that she had a bruise on her." *Id.* In fact, however, "[Small] didn't do it." JA 578. Koeck testified that he would have used Campbell's testimony about this conversation with Martin exclusively to impeach Martin's credibility. JA 555.

While Campbell's testimony would seemingly cast doubt on Martin's accusations, the evidentiary hearing also disclosed some basis for questioning Campbell's own credibility. Koeck

conceded in his testimony at the evidentiary hearing that he was aware of an audiotaped conversation between Campbell and Small, which may have damaged Campbell's credibility. James Lowe, the prosecutor in Small's case, testified for the State at the hearing. Lowe testified that on the tape, Small told Campbell that Maxcine Martin was "mad because [Small] whipped her *** ass." JA 60. Further, Lowe testified, Campbell stated on the tape that she had been told by Martin that Small had beat Martin up.[1] *Id.* The conversation was taped during a period in which Campbell had agreed to cooperate with the State in investigating Small on an unrelated offense. Koeck stated that the existence of this tape was "a consideration" in his decision not to call Campbell to testify, but he denied that this factor alone caused him to reconsider putting Campbell on the stand. JA 567-569. Instead, he testified, the ultimately incorrect news that Campbell had a criminal record "was the straw that broke the camel's back" in convincing Koeck that Campbell should not testify. *Id.* at 569.

The trial court denied postconviction relief, relying on the rationale that Small was not prejudiced by Koeck's failure to investigate Campbell's record, because factors such as Koeck's doubts about Campbell's credibility and his fear that the taped conversation would damage his client, may have explained Koeck's decision not to call Campbell as a witness. JA 689. The Ohio

---

[1]Campbell's evidentiary hearing testimony conflicted to some extent with Lowe's. In response to the prosecutor's question about whether she remembered having told Small that Martin had accused Small of assaulting her, Campbell testified, "I don't remember that. I know she said he pushed her." JA 587-589. Neither the trial court nor the Ohio Court of Appeals made findings of fact on what Campbell said during the conversation. The contents of the tape do not form part of the record in this habeas case.

Court of Appeals affirmed. The Court of Appeals noted that the failure to research Campbell's record likely did not prejudice Small's defense, for two reasons. First, the court noted, trial counsel admitted that he knew Campbell was at one time Small's girlfriend, and counsel also acknowledged that he had doubts about Campbell's credibility. JA 61. Second, "had Campbell testified, the state could have impeached her testimony through the tape, and [Small's] incriminating statements could also have been introduced." JA 61. Therefore, the Ohio Court of Appeals found Small's ineffective assistance claim to be without merit. On October 30, 2002, the Ohio Supreme Court declined review. JA 918.

On March 4, 2003, Small filed a petition for habeas corpus. A magistrate judge recommended that all of Small's habeas claims, including the one at issue here, lacked merit. The magistrate concluded that the Ohio Court of Appeals' finding that no prejudice resulted from Koeck's counsel's failure to research Campbell's criminal history, was not an unreasonable application of federal law. JA 985. The district court adopted the magistrate's report and recommendation, but granted a certificate of appealability on the sole issue of whether Small's counsel was ineffective for failing independently to research Campbell's criminal record. JA 1038. Small appeals the district court's decision.

Small claims that he was denied effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments, by his trial counsel's failure to conduct a reasonable investigation into Jean Campbell's criminal background before deciding not to call Campbell as a witness. The highest state court to consider this claim, the Ohio Court of Appeals, determined that, even assuming

that Small's counsel performed deficiently, Small could not demonstrate that he was prejudiced by his counsel's actions. The district court agreed with this conclusion in denying habeas relief. Because the state court's decision was not contrary to or an unreasonable application of federal law, the decision of the district court is affirmed.

This court may grant a state prisoner's application for a writ of habeas corpus only if a state court decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413.

A criminal defendant must prove the following in order to establish a claim for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984). The state court determined that, even assuming that counsel's performance fell below an objective standard of reasonableness, Small could not demonstrate that he had been prejudiced by his counsel's actions. *State v. Small*, Nos. 01AP-1007, 01AP-1008, 2002 WL 1379127, at * 5 (Ohio Ct. App. June 27, 2002). The district court found that the state court's conclusion was not an unreasonable application of *Strickland*.

Small argues that the district court erred in finding no prejudice. Specifically, Small contends that the district court erred in accepting the Ohio Court of Appeals' incorrect assumption that the tape-recorded conversation between Campbell and Small was admissible for purposes of impeaching Campbell. Small argues that the state court should not have taken the tape-recorded conversation into account in evaluating whether Campbell's absence as a witness prejudiced Small's defense. The recording would be inadmissible as a prior inconsistent statement impeaching Campbell, Small argues, because nothing in the recording contradicted the testimony Campbell planned to offer at trial: that Martin admitted to Campbell Martin's intention to accuse Small falsely in order to seek revenge against him. Small concedes that the tape recording contains Small's admission that he assaulted Martin once. Nonetheless, Small argues, the tape does not "prove two counts of burglary, one count of kidnapping, and one count of aggravated burglary." Appellant's Br. at 11.

Small's contentions do not compel a conclusion that trial counsel's performance prejudiced Campbell, for two reasons. First, Koeck's failure to research Campbell's criminal record may not have been the main cause of Koeck's decision not to call Campbell to the stand. Second,

Campbell's absence as a witness likely did not prejudice Small's defense, both because she may have been subject to impeachment, and because of the weight of the evidence against Small.

Koeck's failure to investigate may not have been the decisive factor in Koeck's decision not to call Campbell to the stand. The Ohio Court of Appeals found that the information concerning one Jean Campbell's criminal record "was provided to defense counsel with the express provision that counsel would need to provide further information (i.e., date of birth, social security number) in order to determine if the record check was for the same Jean Campbell." JA 60. When, after hearing this news, Koeck asked Campbell whether she in fact had a criminal record, she stated that she did not. *Id.* Further, Campbell testified at the evidentiary hearing that Koeck had told her, after learning from the prosecutor about a positive record check for a person by the same name, that the record could belong to "any Jean Campbell." JA 591. Koeck's testimony in the state court evidentiary hearing that the news of Campbell's criminal record formed "the straw that broke the camel's back" in Koeck's decision not to call Campbell to the stand, lacks credibility in light of these facts.

Other factors, noted by the Ohio Court of Appeals, may have played a more important role than the prosecution's criminal record check in Koeck's decision not to call Campbell to the stand. Koeck knew that Campbell and Small had a past, and possibly present, romantic relationship.[2] In addition, Koeck questioned the truth of Campbell's intended testimony. Koeck testified at the state postconviction relief evidentiary hearing that he "was very hesitant about whether [Campbell] was

---

[2]Campbell was previously Small's girlfriend. In addition, the magistrate judge's report and recommendation states that "[a]t sentencing petitioner repeatedly referred to Campbell as 'his woman.'" JA 985.

telling me the full story as to what happened. I got the impression not that anything that she was telling me was false but that she was not completely forthcoming in everything that was going on." JA 559.

Even if Koeck's misplaced confidence in the prosecutor's criminal record check did cause him not to call Campbell to testify, the Ohio Court of Appeals properly found that Campbell's absence as a witness did not prejudice Small's defense. The state court properly found that Campbell may have been susceptible to impeachment. A habeas court is generally bound by state court interpretations of state law. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). We must presume that the Ohio Court of Appeals correctly interpreted Ohio evidence law when it concluded that the tape-recorded conversation between Campbell and Small could have been used to impeach Campbell. Moreover, there is reason to doubt Small's argument that the tape-recorded conversation is not inconsistent with Campbell's proposed testimony. On the tape, the parties agree, Small admits to Campbell that he assaulted Martin. Further, the prosecutor testified that on the tape, Campbell reported to Small that she had heard Martin accuse Small of assaulting her. Campbell intended to testify that she had been told by Martin that Martin planned falsely to accuse Small of beating her, causing a bruise, when in reality Small did not cause the bruise. JA 578. Campbell would have been called to the stand solely to testify that Martin had described a plan to accuse Small falsely of assault. Without delving into Ohio evidence law, we can conclude that the state court was at least arguably correct in determining that Campbell's credibility would be damaged by any testimony about Campbell's tape-recorded conversation with Small, which contained an admission that Small had assaulted Martin. Under these circumstances, the Ohio Court of Appeals did not apply

*Strickland* unreasonably when it determined that counsel's failure to investigate Campbell's criminal record did not prejudice Small's defense.

Finally, even assuming that the jury would have believed Campbell's testimony at trial, the strength of the other evidence against Small weighs against a finding that Small was prejudiced by Campbell's absence as a witness. *See Strickland,* 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Martin's neighbor testified that she had previously seen Small jump out of the bushes and assault Martin. In addition, the prosecution introduced into evidence a photograph of bruises on Martin's body. Finally, Martin's son had a receipt, and a warranty with his name on it, for the Dreamcast video game system that Small allegedly stole from Martin's son (and which Small claimed was his own).

Given the possibility that Koeck would have chosen not to call Campbell even without any dispute about her criminal record, the likelihood that Campbell's credibility would be impeached, and the strength of the evidence against Small, the state court reasonably determined that the prejudice prong of *Strickland* was not met, and therefore that Small's ineffective assistance claim failed.

For the foregoing reasons, we affirm the decision of the district court.